Postal Telegraph-Cable Co. *v.* Wirt Adams, State Revenue Agent.

1. Privilege Tax. *Foreign telegraph company. Interstate commerce. Act of 1888.*

   The privilege tax of one dollar per mile imposed by the revenue act of 1888 (Laws, p. 9) on each telegraph company operating less than one thousand miles of wire, being in lieu of all other taxes, state, county and municipal, and less than the *ad valorem* tax, if exacted, would be, may lawfully be enforced against a foreign corporation operating a line of telegraph in and across this state, although the sending of messages to and from other states be a part of its business. The enforcement of such a tax is not an interference with interstate commerce.

2. Same. *Telegraph company. Governmental agent. Act of congress 1886.*

   The privilege tax imposed by said act of 1888 is collectible from said foreign corporation, although it had previously accepted the restrictions and obligations of the act of congress of July 24, 1866, entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military and other purposes," and thus had become an agency of the United States government for transmitting its messages. Said tax, being reasonable and determinable by the amount, and necessarily by the value, of the property of the corporation in this state, does not exclude or interfere with its business as such governmental agent.

From the circuit court of the first district of Hinds county. Hon. J. B. Chrisman, Judge.

Action by the state revenue agent against the Postal Telegraph-Cable Company. The declaration contains two counts. The first seeks recovery of privilege taxes for the years 1888 and 1889, and the second count demands *ad valorem* taxes for the same years, based upon an assessment made by the reve-

nue agent.   The defendant demurred to the second count on the ground that the statutes conferring authority on the revenue agent to assess for *ad valorem* taxes, and to bring suit therefor, are unconstitutional.   The demurrer was sustained, and the cause proceeded as an action for the recovery of privilege taxes only.

To the first count defendant interposed several pleas, by which it attacks the validity of the act of 1888, so far as it exacts a privilege tax from defendant, a foreign corporation. These pleas aver that defendant is a corporation, chartered by the state of New York, and owning and operating lines of telegraph in and across many states of the Union; that its lines in the state of Mississippi are used by it in receiving and sending messages to and from other states; that the privilege tax sought to be enforced against it is a burden on, and an interference with, interstate commerce, and therefore repugnant to the constitution of the United States.

Defendant, in its pleas, also avers that it had duly and regularly availed of the act of congress, approved July 24, 1866 (now title 65 of the Revised Statutes of the United States), entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military and other purposes;" that the defendant had filed with the postmaster-general its written acceptance of the restrictions and obligations of said act of congress, and, pursuant thereto, the postmaster-general had designated defendant as one of the telegraph companies that must transmit messages for the United States at a price and rate fixed by him; that the obligations and privileges thus incurred are still in force, and that defendant has, since 1886, been continuously engaged, as a governmental agent of the United States, in transmitting messages for the government between various offices on its lines, not only from points within the state of Mississippi to other points within the said state, but also to and from points in other states; that its lines in the state of Mississippi and adjoining states are located along

the various highways, which are post-roads of the United States. Defendant, in view of these facts, which it alleges constitute it an agency under the federal government, contends that the privilege tax sought to be enforced against it is illegal.

The plaintiff demurred to these pleas of the defendant, the demurrer was sustained, and, defendant declining to plead further, judgment was rendered in favor of plaintiff for the amount of the privilege taxes for 1888 and 1889, and from this judgment defendant appeals.

*R. S. Guernsey, Mordecai & Gadsden* and *Brame & Alexander*, for appellant.

1. The statute in question is a burden and a charge upon interstate commerce.

2. Appellant is a corporation of the state of New York. Its business is that of interstate commerce, and no state can exact from it a license tax for the privilege of enjoying its franchise within its jurisdiction.

3. Even if the tax be considered as a tax on gross receipts, the statute is fatally defective in not confining the operation of the tax to the receipts derived from intra state business.

4. Appellant having accepted the provisions of the act of congress of 1866, is a governmental agent. A part of its ordinary business is the transmission of messages of a public nature for the United States government. The privilege tax in question is an interference with this business, and is therefore void. The statute is general. It is made penal for appellant to transact any of its business in this state without first paying the tax.

5. While the tax is measured by the number of miles of wire operated in this state, it is nevertheless a privilege or license tax, pure and simple. Viewed as an *ad valorem* tax, it would not be equal and uniform, since other property is not taxed in this way.

In support of the main points, see *Foster* v. *Master & War-*

*den*, 94 U. S., 246; *Moran* v. *New Orleans*, 112 *Ib.*, 69; *Glou-cester Ferry Co.* v. *Pennsylvania*, 114 *Ib.*, 196; *Pickard* v. *Pullman Co.*, 117 *Ib.*, 34; *Railroad Co.* v. *Maryland*, 21 Wall., 456; *Pensacola Tel. Co.* v. *Tel. Co.*, 96 U. S., 1; *Tel. Co.* v. *Texas*, 105 *Ib.*, 460; *Philadelphia Steamship Co.* v. *Pennsyl-vania*, 122 *Ib.*, 326; *Tel. Co.* v. *Pendleton*, 122 *Ib.*, 347; *Rat-terman* v. *Tel. Co.*, 127 *Ib.*, 411; *Leloup* v. *Port of Mobile*, 127 *Ib.*, 640; *Lyng* v. *Michigan*, 135 *Ib.*, 161; *McCall* v. *Califor-nia*, 136 *Ib.*, 104; *Crutcher* v. *Kentucky*, 141 *Ib.*, 47.

*Williamson & Potter*, for appellee.

It is conceded that appellant transmits messages, private as well as governmental, between points wholly between points in Mississippi, as well as interstate messages. It will also be noticed that the law imposes the privilege tax in lieu of all other taxes. Moreover, the very franchise of the corporation, the right to be a corporation, as distinguished from its material assets, is itself property, and subject to taxation. The tax in question is reasonable, being less than the *ad valorem* tax would be, and it affects the interstate traf-fic of appellant only incidentally. We submit that the au-thorities sustain the validity of the tax. See *Home Insur-ance Co.* v. *New York*, 134 U. S., 594; *Maine* v. *Grand Trunk Railway Co.*, 142 *Ib.*, 217; *Horn Silver Mining Co.* v. *State*, 143 *Ib.*, 305; *Ficklin* v. *Taxing District*, 145 *Ib.*, 1; *Moore* v. *Eufaula* (Ala.), 11 So. Rep., 921; *Lumberville Bridge Co.* v. *State*, 26 At. Rep., 711; 8 Wall., 168; 18 *Ib.*, 206; 95 U. S., 80; 100 *Ib.*, 428; 107 *Ib.*, 365; 125 *Ib.*, 530; 141 *Ib.*, 18; 143 *Ib.*, 305.

Woods, J., delivered the opinion of the court.

This action was instituted by the revenue agent of the state for the recovery of a privilege tax alleged to be due by the appellant for the years 1888 and 1889, under § 585, code of 1880, and the amendment thereto contained in § 1, ch. 3, acts of 1888. Under the statute thus amended, among other

provisions, we find this language: "A tax on privileges is levied as follows, to wit: On each telegraph company operating 1,000 miles or more, which shall be in lieu of other state, county or municipal taxes, $3,000; . . . on each telegraph company operating less than 1,000 miles of wire, for each mile of wire, $1." The declaration alleges that the appellant operated, in the aggregate, during the years named, three hundred and ninety-one and twenty-eight one hundredths miles of wire in the state of Mississippi, and was, therefore, under the statute, liable for a tax of $391.28 for each year named.

It will be thus seen at once that this is a tax imposed upon a telegraph company, in lieu of all others, as a privilege tax, and its amount is graduated according to the amount and value of the property measured by miles. It is to be noticed that it is in lieu of all other taxes, state, county, municipal. The reasonableness of the imposition appears in the record, as shown by the second count of the declaration and its exhibits, whereby the appellant seems to be burdened in this way with a tax much less than that which would be produced if its property had been subjected to a single *ad valorem* tax.

The pleas bring in question the validity of our statute, and aver its conflict with the interstate commerce clause of the constitution of the United States.

The record presents a federal question, and we acknowledge ourselves bound to follow the decisions of the court of last resort of the United States, if that court shall be found to have adjudicated it. Our difficulty arises from our inability to say with confidence what the supreme court of the United States has finally determined in cases of like character. The reported opinions of that court are so irreconcilable in their variances and seeming conflicts, in our view, that it is with diffidence that the impartial student can affirm what will or will not follow in any given state of case.

If the line of decisions adopted in *Pensacola Tel. Co.* v. *Western Union Tel. Co.*, 96 U. S., 1; *Western Union Tel. Co.*

v. *Texas,* 105 *Ib.,* 460; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 *Ib.,* 196; *Pickard* v. *Pullman Southern Car Co.,* 117 *Ib.,* 34; *Robbins* v. *Taxing District,* 120 *Ib.,* 489; *Leloup* v. *Port of Mobile,* 127 *Ib.,* 640; and *Crutcher* v. *Kentucky,* 141 *Ib.,* 47, stood alone, the settlement of the controversy in the case at bar would be made, without great difficulty, in accordance with the contention of the appellant. But the numerous other cases decided by the same great tribunal, in which was involved the same or like questions as are to be found in those just named, and in which contrary views seem to have been upheld, involves the controversy in much apparent, and, as we think, some real difficulty. If we had for our guidance only the other line of decisions, embracing *State Tax on Railway Gross Receipts,* 15 Wall., 284; *Osborne* v. *Mobile,* 16 *Ib.,* 479; *Wiggins Ferry Co.* v. *East St. Louis,* 107 U. S., 365; *Western Union Tel. Co.* v. *Massachusetts,* 125 *Ib.,* 530; *Maine* v. *Grand Trunk Railway Co.,* 142 *Ib.,* 217; *Ficklin* v. *Shelby County,* 145 *Ib.,* 1; *St. Louis* v. *Western Union Tel. Co.,* 148 *Ib.,* 92, the right of the revenue agent of the state to maintain this suit successfully would seem to be well established in accordance with the views of counsel for appellee.

If from generalization we descend to detail, the confusion that prevails in the decisions of the court whose lead we are bound to follow touching interstate commerce, will be seen at once, and their confusion will deepen on protracted examination.

In the case of the *Telegraph Co.* v. *Texas, supra,* Mr. Chief Justice Waite, speaking for a unanimous court, said : " The Western Union Telegraph Company, having accepted the restrictions and obligations of this provision by congress, occupies in Texas the position of an instrument of foreign and interstate commerce and of a government agent for the transmission of messages on public business. Its property in the state is subject to taxation the same as other property, and it may undoubtedly be taxed, in a proper way, on account of its occupation and business." This very language of the

then chief justice is quoted with approbation in *Telegraph Co.* v. *Massachusetts*, 125 U. S., by Mr. Justice Miller, speaking for an undivided court. It is unqualifiedly declared in these two cases that the telegraph company, the agent of the government and engaged in interstate commerce, as held repeatedly in the court whose decisions we are reviewing, " may undoubtedly be taxed, in a proper way, on account of its occupation and its business."

But in *Leloup* v. *Port of Mobile* (as well as in other cases), 127 U. S., Mr. Justice Bradley, speaking for the same united court, says : " Ordinary occupations are taxed in various ways, and, in most cases, legitimately taxed. But we fail to see how a state can tax a business occupation when it cannot tax the business itself. . . . In *Western Union Tel. Co.* v. *Texas*, 105 U. S., 460, we decided that a state cannot lay a tax on the interstate business of a telegraph company, as it is interstate commerce. . . . In the present case, it is true, the tax is not laid upon individual messages, but it is laid on the occupation or the business of sending such messages. It comes plainly within the principle of the decisions lately made by this court in *Robbins* v. *Taxing District of Shelby County*, 120 U. S., 489, and *Philadelphia and Southern Steamship Co.* v. *Pennsylvania*, 122 *Ib.*, 326." And this rule seems to be adopted in one or two later cases. The conflict in the decisions on this point appears to be sharp and irreconcilable.

The case of *Osborne* v. *Mobile*, 16 Wall., occupies a most unique position. In this case, the court held that a privilege tax levied upon an express company having business intraterritorial as well as extraterritorial, was not invalid or repugnant to the interstate commerce clause of the federal constitution. In *Pickard* v. *Pullman Southern Car Co.*, 117 U. S., the case of *Osborne* v. *Mobile* was re-examined, and the correctness of its determination re-affirmed ; and in *Robbins* v. *Shelby Taxing District*, 120 U. S., Mr. Chief Justice Waite and Mr. Justice Field and Mr. Justice Gray, in their dissenting opinion, refer to it as unchallenged authority. It has

been quoted by Mr. Justice Bradley, in a dissenting opinion, as authority. But the judge last named, in delivering the opinion of the court in another case, the case of *Leloup* v. *Port of Mobile*, indulges the remark that the Osborne case would now be decided otherwise.

Again, in the case of *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S., 196, it was held that the transportation of passengers and freight for hire by a steam ferry across the Delaware river, from New Jersey to Philadelphia, by a New Jersey corporation, is interstate commerce, and not subject to taxation by the state of Pennsylvania, while in *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S., 365, the court holds that the state has the power to impose a license fee upon ferry-keepers living in the state for boats which they own and use in conveying, from a landing in the state, passengers and goods across a navigable river to a landing in another state.

Once more, *Pickard* v. *Pullman Southern Car Co.*, 117 U. S., 34; *Leloup* v. *Mobile*, 127 U. S., 640, and *Norfolk & Southern Railroad Co.* v. *Pennsylvania*, 136 U. S., 114, in no doubtful terms deny to the states the right to impose a license tax on any agency employed, even partially, in interstate commerce; but, on the other hand, *Telegraph Co.* v. *Massachusetts*, 125 U. S., 530, and *Maine* v. *Grand Trunk Railway Co.*, 142 U. S., 217, unmistakably uphold a tax imposed upon a railway company engaged partially in interstate commerce, for the privilege of exercising its franchise. It is true the amount of these privilege taxes is arrived at by the ascertainment of the earnings of the railway company within the state, and by the ascertainment of the valuation of the property within the state, in the telegraph company case; but they are, by the very terms of the statutes of the two states imposing them, in the one case "an annual excise tax for the privilege of exercising its franchise in this state, which, with the tax provided for in section one, shall be in lieu of all taxes upon such railroad, its property and stock," and in the other "a tax upon its corporate franchises at a valuation

thereof equal to the aggregate value of the shares in its capital stock." In the case of the *Telegraph Co.* v. *Massachusetts*, 125 U. S., it is to be observed that the tax was not upon the franchises of a domestic corporation, but upon those of a foreign one, the Western Union Telegraph Co., a New York corporation, and one employed in interstate commerce, and employed as a governmental agency also. It is no answer to the contention that these were privilege taxes, taxes upon the exercise of franchises, to assert that they were really taxes levied upon the property of the corporation. They are distinctly declared to be taxes on corporate franchises, taxes for the privilege of exercising corporate franchises, and the mere fact that the state adopted one method or another of fixing the amount of the tax, is of no real value in the discussion. The question involved is not that of amount or method of ascertaining amount, but the validity of the tax itself, in any amount, ascertained in any way.

Are we mistaken in declaring that the decisions of the supreme court of the United States are not concordant on this most perplexing subject? We support ourselves in our perplexity by quoting the language of Mr. Justice Miller in *Fargo* v. *Michigan*, 121 U. S., 230. Speaking on this very subject, the learned judge said : " With reference to the utterances of this court, until within a very short time past, as to what constitutes commerce among the several states, and as to what enactments by the state legislature are in violation of the constitutional provision on that subject, it may be admitted that the court has not always employed the same language, and that all the judges of the court who have written opinions for it may not have meant precisely the same thing." It appears to us that it is just and altogether decorous now to say that repeated and careful study of the decisions between 121 and 148 U. S. will warrant us also in asserting that the language employed by the court in the more recent cases of this character has not been the same, and that the judges who have written the later opinions have

not meant precisely the same thing. Unable, then, to say certainly what the judgment of the supreme court of the United States would be in the case in hand if presented to it, we feel at liberty to decide the controversy according to our own views of what is right on the facts disclosed—views not unannounced in that tribunal, whose final word is law.

This is the case of a foreign corporation admitted to the use and enjoyment of its corporate franchises in our state upon terms of perfect equality with all others. It is freely permitted to engage in the vast and varied employments connected with its business; it has the use and enjoyment of the country highways of the state, and the streets of our villages, towns and cities, for the planting of its poles and the construction of its lines; and it has the care and protection of our laws and government. In return, the state claims the right to treat it as she treats similar corporations chartered by her own authority. She asserts her authority to tax the exercise of its franchises in her midst as she does all others, domestic as well as foreign corporations. The state may tax its property as she does all other property, of persons or corporations, within her limits. She may tax the exercise of its franchises within her borders and under the sheltering protection of her laws and government, and no foreign corporation may arrogantly assume any superiority over her domestic corporations. The privilege tax, the tax on the business, the occupation, the tax on the exercise of franchises, may be incidentally burdensome to interstate commerce. It does affect the business somewhat and inevitably; but so does an *ad valorem* tax on the property employed in such commerce. It subtracts that much from the sum-total engaged in the traffic. So does the tax on gross receipts, as in the case of *State Tax on Railway Gross Receipts*, 15 Wall.; so does the tax for the privilege of exercising its franchises by a railroad company in any state, ascertainable and determinable by the amount of its gross transportation receipts scaled as required in *Maine* v. *Grand*

*Trunk Railway Co.*, 142 U. S.    Every tax is a burden, and, to the extent imposed, is an interference with the pursuit or business upon which it is laid.    If the business is partly interstate commerce, then that commerce is incidentally affected and interfered with by every tax, of any nature whatever, that may be levied on it.

In the case at bar there is no direct burden upon interstate commerce; there is no further interference with it than will be found necessarily to result from the imposition of any burden of taxation in any shape.    For the use and occupation of the public roads of this state, for protection of its laws and government in the exercise of its franchises, and as its reasonable and proper contribution for the support of the government whose care and shelter it enjoys, the state has imposed a privilege tax, ascertainable and determinable by the number of miles of wire in this state, in lieu of all other taxes, and in an amount less than an *ad valorem* tax on its visible property would yield.    The appellant is reasonably required to pay what is called a privilege tax, but it is a tax in lieu of all *ad valorem* and other taxes, state, county and municipal, on property in this state.    The state has chosen to impose a smaller burden than she might have done, unquestionably, if the property of the appellant had been subjected to the same rate of taxation as all other property whose *situs* is within her borders.    By the imposition of a certain tax per mile on the lines wholly within her limits, the state secures from appellant that which appears certainly not to be a sum in excess of the amount which might have been imposed as an *ad valorem* tax.    It seems to us that this position is supported by the opinions delivered and the results reached in *Osborne* v. *Mobile, Telegraph Company* v. *Massachusetts, Maine* v. *Grand Trunk Railway Company, Ficklin* v. *Shelby County* and *St. Louis* v. *Western Union Telegraph Company*, not to mention others that collaterally yet powerfully tend in the same direction.

In the case at bar there is no taxation of messages, inter-

state and other; there is no exclusion, or attempted exclusion, by state law, of a governmental agency or a foreign corporation partially engaged in interstate commerce; there is no taxation which interferes with, interrupts or burdens interstate commerce. There is a moderate, reasonable tax, called a privilege tax, but ascertainable and determinable by the amount, and necessarily by the value, of the appellant's property lying wholly in this state, imposed in lieu of all others; and this tax burdens and interferes with interstate commerce just as a tax on each telegraph pole does, as in the case of *St. Louis* v. *Western Union Telegraph Co.;* or as a tax on corporate franchises whose value is ascertainable and determinable by value of the shares of capital stock proportioned to the length of the telegraph lines in the state, as in *Telegraph Company* v. *Massachusetts;* or as an annual tax for the privilege of exercising corporate franchises whose amount is to be determined by the gross transportation receipts, measured by the intrastate mileage compared with the total length of the railway within and without the state, as in *Maine* v. *Grand Trunk Railway Co.*

We adopt the language of Mr. Justice Miller in delivering the opinion of the court in *Western Union Telegraph Co.* v. *Massachusetts:* " While the state could not interfere by any specific statute to prevent a corporation from placing its lines along their post roads, or stop the use of them after they were placed there, nevertheless, the company receiving the benefits of the laws of the state for the protection of its property and its rights, is liable to be taxed upon its real and personal property as any other person would be. It never could have been intended by the congress of the United States, in conferring upon a corporation of one state the authority to enter the territory of another state, and erect its poles and lines therein, to establish the proposition that such a company owed no obedience to the laws of the state into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support,"

and to this enlightened and just observation, we unite the equally enlightened and just observation of Mr. Chief Justice Waite in *Telegraph Co.* v. *Texas* (quoted with approbation in the long subsequent case of *Telegraph Co.* v. *Massachusetts*, 127 U. S.) : "The Western Union Telegraph Company, having accepted the restrictions and obligations of this provision by congress, occupies in Texas the position of an instrument of foreign and interstate commerce, and of a government agent for the transmission of messages on public business. Its property in the state is subject to taxation the same as other property, and it may undoubtedly be taxed in a proper way on account of its occupation and business."

*Affirmed.*