PULLMAN COMPANY v. WIRT ADAMS, STATE REVENUE AGENT.

1. INTERSTATE COMMERCE. *Privilege taxes. Code* 1892, § 3387. *Sleeping
    and palace car companies.*

    Code 1892, § 3378, imposing a privilege tax "on each sleeping and pal-
    ace car company carrying passengers from one point to another in
    this state, $100, and, in addition thereto, 25 cents a mile for each
    mile of railroad over which the company runs its cars "—

    (a) Requires the tax to be paid alone for doing business in this state,
    and is not void as a regulation of interstate commerce.

    (b) Under it such a company need not take out license or pay the tax
    for doing interstate business.

2. SAME. *Compulsory local business. Loss. Constitution* 1890, sec. 195.

    It is no defense to a suit for such taxes that defendant's business in
    this state was done at a loss, and that it could not have declined
    the business, because by constitution 1890, sec. 195, it was made a
    common carrier.

FROM the circuit court, first district, of Hinds county.

HON. ROBERT POWELL, Judge.

Adams, state revenue agent, the appellee, was plaintiff, and
the Pullman company, the appellant, defendant in the court
below.    The suit was brought by Adams in his official capacity,
as authorized by statute (laws 1894, p. 29) to collect from the
Pullman company the privilege taxes imposed on it by statute,
code 1892, § 3387, for the years 1892, 1893 and 1894.    The
declaration charged that the defendant carried on the business
of a sleeping and palace car company in this state during each

of said years, giving the number of miles of railroad in the
state upon which said business was conducted, averred that the
privilege tax had never been paid, and demanded judgment for
the aggregate sum claimed to be due from defendant, as fixed
by the code section, computed by the miles of railroad on
which it did business.    To the declaration, in addition to a
general traverse, the defendant pleaded two special pleas, which
were as follows:

"2.  And for further and second plea in this behalf, defend-
ant says it is a foreign corporation, incorporated by and under
the laws of the State of Illinois, having its domicile in the
city of Chicago therein; that during the said years 1892, 1893
and 1894, it had no property, office or resident agent or em-
ploye in the State of Mississippi engaged in the business men-
tioned in plaintiff's declaration, and that defendant's sleeping
and palace cars in use in Mississippi were manufactured by
defendant in Illinois, and not run by defendant in Mississippi,
but were run therein by the several railroad companies hauling
the same, under contracts by the terms whereof defendant, for
a specified consideration, acquired the right to charge each pas-
senger who should ride therein for a reserved seat in the day
and a bed by night; that the said railroads ran and hauled said
sleeping cars and palace cars into and through the State of Mis-
sissippi, and that the said cars were used and employed in in-
terstate commerce, and from points in Mississippi to points
without the state, from points outside of to points in Missis-
sippi, and from points outside of, through that state, to other
points outside of same; that the passengers carried on defend-
ant's cars during said years, from one point to another within
the State of Mississippi, bore an inconsiderable proportion to
the other passengers carried thereon, and that the statute of
Mississippi levying a tax upon the business so operated, and
imposing penalties of fine and imprisonment for the violation
thereof, was and is, as to this defendant, in contravention of
section 8, article 1, of the constitution of the United States,

committing to the congress of the United States the regulation of commerce between the states, and is and was null and void, and this defendant is ready to verify.

" 3. And for a further and third plea in this behalf, defendant says it is a foreign corporation incorporated by and under the laws of the State of Illinois, has its domicile in the city of Chicago, therein, and in the years 1892, 1893 and 1894 had no property, office or resident agents or employes in the State of Mississippi engaged in the business mentioned in the plaintiff's declaration, and that defendant's sleeping cars and palace cars are and were the only cars of such character ever run in the State of Mississippi; that prior to the first day of November, 1890, when defendant, by the constitution of 1890, State of Mississippi, was made a common carrier within said state, and ever since the said first day of November, 1890, the sleeping cars and palace cars of the defendant in said declaration mentioned were used and employed in said state in an interstate business, on railway lines extending from other states into Mississippi, and through Mississippi into other states, and were run from points in to points outside of Mississippi, and through Mississippi from points outside of to other points outside of said state; that the profits realized by defendant from persons going from one point in Mississippi to another point in said state on its cars, while used and employed in said state as aforesaid, have never equaled the expense properly charged against the same, and the deficit thus arising has always been operating as a burden upon its interstate business, and the defendant avers that the law of Mississippi of 1892, whereby the defendant was required to pay a tax upon its business under the penalties of fine and imprisonment, after being made a common carrier as aforesaid was and is, as to this defendant, in contravention of section 8, article 1, of the constitution of the United States, whereby the regulation of commerce between the states was committed to the congress of the United States, and was and is null and void, and this defendant is ready to verify."

Demurrers to these pleas were sustained by the court below, judgment passed for the plaintiff, and the defendant appealed to the supreme court.

*McWillie & Thompson*, for appellant.

In the solution of questions arising under the provisions of the federal constitution committing to congress the regulation of commerce between the states, much depends in the case of foreign corporations upon the nature of the business carried on in the state seeking to regulate the same. All corporations, it may be broadly stated, the business of which is of a local and domestic character, are subject to such conditions as state authority may impose. Included among these are manufacturing companies, insurance companies, and express companies, the latter having fixed places of business, property employed in the business in all such places, and resident agents and employes to carry on the business. *Bank of Augusta* v. *Earle*, 1 Pet., 519; *Paul* v. *Virginia*, 8 Wall., 168; *Insurance Co.* v. *Massachusetts*, 10 Wall., 566; *Cooper Mfg. Co.* v. *Ferguson*, 113 U. S., 727; *Philadelphia Fire Ins. Assn.* v. *New York*, 119 U. S., 110; *Crutcher* v. *Kentucky*, 141 U. S., 59.

In the case last cited it was held that only express companies the business of which is confined to points and places wholly within the state, are included in this class, and that where such a company is engaged in interstate commerce, its agent would not be liable for a privilege tax imposed by a state, although, as incidental to its main business, it did some local business by carrying packages from one point to another wholly within such state.

The strong opinion of Judge Bradley in this case is reviewed in the subsequent one of *Osborne* v. *Florida*, 164 U. S., 650, and, we think, overruled, although, in his opinion, Judge Peckham undertakes to show that he does not overrule it, while announcing a wholly different conclusion on essentially the same state of facts. It is only fair to note, however, that in the

latter case the statute imposing the tax and the penalty for its nonpayment had already been construed by the supreme court of Florida as relating only to local business, and the obligation to conform to the interpretation given by the state court to the state law was distinctly recognized in the opinion.    Possibly, as an original proposition, the question would have been differently decided.    It is hard to see how the court could ignore its own earlier decision, but certainly it was differently decided in *Crutcher* v. *Kentucky*.    But, however this may be, we are not considering the case of an express company's liability to regulation like that in question, but that of a foreign corporation engaged in interstate commerce of a peculiar and exceptional kind.    The plea avers that the defendant company had neither property, agents or employes in Mississippi; that its main business was an interstate one, and that the number of passengers transported from points in Mississippi to other points in that state bore an inconsiderable proportion to the other passengers transported in its cars; that its cars were hired to the several railroad companies and run by them under contracts whereby those companies received the transit fare and the defendant the compensation for the sleeping accommodations.

This was exactly the state of the case considered in *Pickard, Comptroller,* v. *Pullman, etc., Co.*, 117 U. S., 34, the only difference, and that a wholly immaterial one, being that the amount of the privilege tax imposed by the State of Tennessee was a tax regulated by the number of cars run over the roads, instead of the number of miles of road over which they were run.    In this case the sleeping car company paid the tax under protest, and then sued the state comptroller and recovered the money he had exacted from it.    Among the other matters covered by the agreed statement of facts in that case, we find the following:  "The same cars also transported passengers from points in Tennessee to other points in that state whenever they properly applied for such transportation, but the number of such passengers bore an inconsiderable proportion to the other

passengers transported in these cars." 117 U. S., 41. The opinion of the court points out with great clearness the relations of the sleeping car company and the railway company leasing its cars, and shows that, while the total charge for both transportation and high-class accommodations is divided between two recipients, that the service was a single one of interstate transit, and that what was paid to the sleeping car company was in reality part of a charge for conveying the passenger, and declares that "the plaintiff carried on no business within the state in the sense in which the carrying on of business in a state is taxable by way of license or privilege." 117 U. S., 46. It will be observed that the tax imposed by the Tennessee statute was, like the Mississippi statute, distinctively a privilege tax. By the very terms of the act it is made and declared to be a privilege tax. 117 U. S., 35.

In another case the supreme court has held that the very company here sued is not subject to the imposition of a privilege tax by state authority. The State of Pennsylvania laid a tax on the capital stock of all transportation companies doing business in that state, and it was decided that the tax was valid as to sleeping car companies, which always had property in the state, although its use had relation to interstate commerce, because the tax was not on business or occupation, but on the capital stock of the corporation on account of the property within the state, and in substance, therefore, a tax on the property, and applied equally to foreign and domestic corporations. *Pullman Co.* v. *Pennsylvania*, 141 U. S., 25.

In the case of *Postal Telegraph Cable Co.* v. *State Revenue Agent*, 71 Miss., 555, this court sustained an act imposing a privilege tax on a foreign corporation engaged in an interstate business, but it was on the distinct ground that the corporation had property with a *situs* in Mississippi, and the privilege tax was in lieu of an *ad valorem* tax on such property. That decision really supports our contention in the present case, the defendant having no such property. In the case at bar not

only had the company no such property in Mississippi, but there can be as well no pretense that the Mississippi tax is a tax upon property.

The case of *Osborne* v. *Florida, supra,* on which the appellee bases his hope of a recovery, is unlike the present controversy in another material particular, apart from the very marked difference between an express company and a sleeping car company operated like that of appellant. In that case Osborne was a local agent, personally subject to the taxing jurisdiction of the state, as representing his principal, and the tax was on the general business he carried on. This difference has been noted by the supreme court with reference to the like case of *Ocberene* v. *Mobile,* 16 Wall., 479, as will be seen by examination of the Pickard case, 117 U. S., 50.

The real intent of the code provision was clearly to impose a tax on the business of a particular foreign corporation engaged in interstate commerce—that is to say, the defendant, which is and was the only sleeping car company whose cars have ever been run in the state. But, looking strictly to its words, there is nothing in the statute to indicate the taxing of a local business except the words used to indicate the character of companies taxed, viz.: "Those carrying passengers from one point to another in the state," which applied as well to companies engaged only in interstate commerce within the state, since such companies would necessarily carry their passengers from one point to another in Mississippi.

Further, while it may seem to be sticking in the bark to say that the defendant is not subject to the tax because it does not, to quote the statute, "run its cars" over any miles of railroad in Mississippi, it should not be overlooked that the position is warranted by a decision of the federal supreme court, which, adopting an English decision, holds that in a case where the cars are hired to and hauled by a railroad company, the latter furnishing the motive power, the fare paid by the passenger to the sleeping car company was a part of the charge for con-

veyance in a particular way, the service being a single one of carriage. 117 U. S., 47, 48. The statute is one of a kind to be strictly construed.

An investigation and analysis of the decisions on the subject of the taxation of foreign corporations leads to the following conclusions:

1. The property of a foreign corporation, engaged in interstate commerce, located within a state, may be taxed by state authority, as, for instance, the mills of the American Cotton Oil Company.

2. The business carried on by a foreign corporation if of a local and domestic character, may also be taxed by state authority, as foreign companies engaged in manufacturing enterprises carried on within the state, instanced by the oil company mentioned, which, though a foreign corporation, makes its product in this state.

3. A foreign corporation engaged in interstate commerce, which also can be said to do business within the state in the sense which would make it subject to privilege taxation by the state, may be so taxed, provided the tax is so laid that it can have no burdensome effect on interstate commerce, as where it is proportioned to the earnings arising out of business infra the state. It has been expressly decided that, if the tax is proportioned on the earnings without as well as within the state, it is unconstitutional. *State* v. *Woodruff, etc., Coach Co.*, 15 S. W. Rep., 814. *Vide*, also, *State* v. *Pullman Car Co.*, 16 Fed. Rep., 193.

We enumerate the above instances of liability of foreign corporations to the kind of taxation in question in order to limit in this branch of our argument our denial of liability, and to show what is meant when we insist that a foreign corporation is not subject to a state tax which may operate as a burden on its interstate business or commerce.

The third plea of defendant set up that the fares received from persons riding from one point to another in Mississippi

did not equal the additional expense of having to provide accommodations for them, and that the deficit thus arising operated as a burden on its interstate business.

If it were allowable to look to the intent of the legislature in respect to such a matter, we could say, as suggested by the averment of its plea, that the defendant's sleeping cars are the only ones that have ever been used in Mississippi, and that the statute in question was passed to affect only the defendant, a foreign corporation engaged in interstate commerce. In such a matter, however, we have to look to the effect of the act.

In whatever language a statute may be framed, its purpose and its validity, under the interstate commerce clause of the constitution, must be determined by its natural and reasonable effect. *Henderson* v. *Mayor*, etc., 92 U. S., 25. The test in such case is upon what does the burden really rest? *Philadelphia, etc., R. R. Co.* v. *Pennsylvania*, 15 Wall., 232. Such an act is not valid because the tax is laid upon local and domestic as well as interstate commerce. *Ib.*

It has been held that state legislation is obnoxious to the constitutional provision, which may operate as a burden upon or interference with the interstate commerce, and we are at a loss to understand how a plea can be demurrable which takes the matter wholly beyond the domain of conjecture by averring as a matter of fact, shown by the practical operation of the cars, that the burden imposed upon the business must be discharged out of the earnings of the interstate business. This court cannot follow the supreme court of Florida, and hold that our statute taxes only the business done wholly within the state, when it is seen that to do so would impute to the legislature the folly of undertaking to put a privilege tax on one business that did not pay expenses, because the party carrying it on had another which was more profitable, especially in this case, for apart from the difference between the two statutes it is a violation of the constitution for a state to tax anything because of its relation to interstate commerce.

It avails nothing for the appellee to claim that it is impossible to fix any part of the expense as being peculiar to the local business, and that the profits from passengers who ride short distances within the state should be considered so much clear gain. The third plea presented a question of fact, as to that matter, which he declined to meet. Moreover, the suggestion involves the idea that the interstate business and the local business are so mixed as to preclude separation, in which case it is well settled that no such tax is enforceable. *Ratterman* v. *W. U. Tel. Co.*, 37 Am. & Eng. R. R. Cas., 368; *Express Co.* v. *Hemingway*, 39 Fed. Rep., 60.

The third plea also shows that the defendant, which was not under the obligations of a common carrier until the adoption of the constitution of 1890, became one by that instrument, and so became bound to provide accommodations for all persons who might desire to ride from one point in Mississippi to another point therein. Constitution 1890, sec. 195; 22 Am. & Eng. Enc. L., 797.

Following the constitutional provision, under which the defendant could not limit its business to interstate commerce, came the code of 1892, § 3387, by which it is claimed the defendant is subjected to a state tax on account of its local business. Now, we take it to be wholly immaterial that this legislation is partly in the constitution and partly in the code, and that the two parts were enacted at different times. They have precisely the same legal effect that they would have had if embodied in a single statute compelling foreign corporations engaged in interstate commerce to also engage in local business, and at the same time imposing on them a privilege tax for so doing, enforceable by designated penalties.

To uphold this legislation is contrary to the case of *Osborne* v. *Florida*, on which the appellee hangs all of his hope. Judge Peckham used in that case this language: "Here, however, under the construction given by the state court, the company suffers no harm from the provisions of the statute. It can con-

duct the interstate business without paying the slightest heed
to the act, because it does not apply to or in any degree affect
the company in regard to that portion of its business which it
has the right to conduct without regulation from the state.''
164 U. S., 655.

It would be very absurd to say that a company, compelled to
do a local business, could carry on its interstate business with-
out paying the slightest attention to the burdens laid upon its
local business when the burdens had to be paid out of the earn-
ings of the interstate business.

*Harper & Potter*, for appellee.

The second plea seeks to justify the nonpayment of this priv-
ilege tax on the ground that the defendant has no property nor
resident agents in the state, and that it is also carrying on an
interstate business, and the third plea goes a little further, and
sets up that defendant carries on its local business at a loss,
and that by the laws of Mississippi it is declared a common
carrier, and hence is, first, compelled to do the local business,
which is done at a loss, and then to pay a privilege tax for so
doing, and thereupon declares that such a result makes the tax
unconstitutional, in that it indirectly burdens its interstate
business.

To this additional part of the third plea we say (1) that the
constitutional provision declaring the defendant a common car-
rier imposes no greater burden on it, so far as the taking of local
business is concerned, than was imposed at common law; (2)
that its duty as common carrier is not to do all kinds of carry-
ing business, but simply to serve all individuals alike in the
kind of business it offers to do. It is clearly competent for a
common carrier to restrict its business to interstate business, if
it see fit, provided the local business is unprofitable. A rail-
road company can, upon reasonable grounds, select the kind of
passenger or freight business it will undertake to carry on, but,
when such selection has been made, it must serve all alike.

Clearly this defendant might decline any local passengers or any local business, if such business be unprofitable, even though it be a common carrier, and confine itself entirely to interstate business. Its right clearly is to classify the business it will engage in upon some reasonable basis, and, when thus reasonably classified and limited, to serve alike all persons coming within such class.

But, if the defendant's contention be correct, that under the law of Mississippi it must do this local business, and at a loss, and thus its interstate business is indirectly burdened, then the defendant must refuse to do the local business on that ground, for it is the law declaring sleeping car companies common carriers that, in that view, would be unconstitutional, and not the license tax. It does not lie in its mouth to first do the local business and get all there is in it out of such business, and then refuse to pay the small tax—to accept all the benefits and decline all the burdens. The law compelling the defendant to do the local business at a loss must be resisted and attacked, not the law requiring the privilege tax.

But the mere fact that this tax may indirectly burden the interstate business of defendant, cannot affect the question here, for any tax of any sort on defendant would have the same effect. In the case of *Telegraph Co.* v. *Wirt Adams, State Revenue Agent*, 71 Miss., 565, which was affirmed by the supreme court of the United States, this court says: ''Every tax is a burden, and, to the extent imposed, is an interference with the pursuit or business upon which it is laid.'' If the business is partly interstate commerce, then that commerce is incidentally affected and interfered with by every tax, of any nature whatever, that may be levied on it. In the case at bar there is no direct burden upon interstate commerce; there is no further interference with it than will be found necessarily to result from the imposition of any burden of taxation in any shape. The tax in that case was a privilege license upon the business generally of the telegraph company, and was not limited to

the local business of such companies. If it be permissible to levy a privilege tax, as in that case, so much the more is it permissible in the case at bar, for the express terms of the act limits and confines the tax on palace or sleeping car companies to business done wholly within the state. If defendant had desired to escape liability for such tax it should have discontinued its local business, and continued its interstate business without let, hindrance or burden. In the telegraph case, above cited, the tax was upheld, though the local and interstate business were not separable. In the case at bar the two classes of business are clearly separable, and by the express terms of the act the local business is thus differentiated from the interstate business, and the tax is levied only on the former. We do not think it will be seriously argued that the state has no authority to require a privilege tax of foreign corporations doing a local business in this state, even though it should indirectly affect its interstate business. A foreign corporation certainly has no greater rights nor deserves any higher consideration than local corporations. This view is ably presented in the opinion of the court in the telegraph case above cited.

We do not believe that any case, either federal or state, can be found denying the right of a state to require a privilege license of a foreign corporation to do a purely local business, even though such a corporation may for the most part be engaged in an interstate business of the same class or kind, when the tax so levied is confined strictly to the local business, either by the express terms of the statute or the construction of the courts. The case of *Pickard* v. *Pullman Southern Car Co.*, 117 U. S., 34, so strongly relied upon by appellant, certainly gives no countenance to such a view. A careful consideration of that case will disclose that the privilege tax was laid upon each and every car run by the company, without regard whether such car was engaged in local or interstate commerce. Under the act then in consideration it would have been impossible for the company to have operated a single car for interstate business

without first having paid such license. Therefore the court held that the tax was a direct license tax upon interstate business. Even if the company had discontinued its local business altogether, it would have been compelled to pay the license tax on all of its cars thereafter used in its interstate business. But in the case at bar the privilege license is exacted solely for doing a local business. If no local business be done, no tax is required. The act itself differentiates and separates the two classes of business.

Every serious contention urged by the appellant is fully met in the recent case of *Osborne* v. *Florida*, 164 U. S., 650. That case is on all-fours with the case at bar, and, if there be any other cases in conflict with the views therein expressed, they are thereby overruled. The State of Florida imposed a license or privilege tax on all express companies doing business in Florida. The terms of the act were broad enough to cover any kind of express business, but the supreme court of that state held that it was intended to impose a tax only on the local business done by such companies. The act made it a misdemeanor for any one to act as agent of a company doing business in violation of its provisions. One Osborne was the agent of such company at Jacksonville, and acted as such agent without the company having first paid such privilege license to the city of Jacksonville. He was arrested, and, on a writ of *habeas corpus*, carried his case to the supreme court of the United States. The case was submitted on an agreed state of facts (found on pages 650, 651 of 164 U. S.), to which statement we invite the careful attention of the court. The supreme court held that the license tax imposed therein on express companies applies solely to business done within the state and does not affect or apply to its interstate business, and, being so construed, the statute does not in any manner violate the federal constitution. The supreme court of the United States carefully reviews all of its previous decisions touching this view and shows that this question had not before been passed upon. In

that case the court says: "It has never been held, however, that when the business of the company which is wholly within the state is but a mere incident to its interstate business, such fact would furnish any obstacle to the valid taxation by the state of the business of the company which is entirely local. So long as the regulation as to the license or taxation does not refer to and is not imposed upon the business of the company which is interstate there is no interference with that commerce by state statute."

It was stated by Mr. Justice Bradley, in the course of his opinion in the Crutcher case, that "taxes or license fees, in good faith imposed exclusively on express business carried on wholly within the state, would be open to no such objection," viz., an objection that the tax or license was a regulation of or that it improperly affected interstate commerce. We have no doubt that it is a correct statement of the law in that regard. The statute herein differs from the cases where statutes upon this subject have been held void, because in those cases the statutes prohibited the doing of any business in the state whatever unless upon the payment of the fee or tax. It was said as to those cases that, as the law made the payment of the fee or the obtaining of the license a condition to do any business whatever, whether interstate or purely local, it was on that account a regulation of interstate commerce, and, therefore, void. Here, however, under the construction as given by the state court, the company suffers no harm from the provisions of the statute. It can conduct its interstate commerce without paying the slightest heed to the act, because it does not apply to or in any degree affect the company in regard to that portion of its business which it has a right to conduct without regulation from the state. The company in this case need take out no license and pay no tax for doing interstate business, and the statute is, therefore, valid."

We insist that the real question here involved has been fully

and finally settled by the cases of *Osborne* v. *Florida*, 164 U. S., 655; *Telegraph Co.* v. *Adams*, 71 Miss., 565.

Argued orally by *T. A. McWillie*, for appellant, and *W. R. Harper* and *W. H. Potter*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The statute under construction is in these words:*

"Section 3387, code 1892. Sleeping cars: On each sleeping and palace car company carrying passengers from one point to another in this state, $100. And, in addition thereto, 25 cents a mile for each mile of railroad over which the company runs its cars."

The whole purpose of this statute, from its terms, manifestly is to require a privilege tax to be paid for doing business within this state, and for that business alone. It relates exclusively to the local business done by the Pullman company within this state. It does not require any tax to be paid for the privilege of doing the interstate business of the company. It does not in any manner affect its interstate business. "It can conduct its interstate business without paying the slightest heed to the act, because it does not apply to or in any degree affect the company in regard to that portion of its business which it has the right to conduct without regulation from the state."

The case of *Osborne* v. *Florida*, 164 U. S., 650, is decisive of this case. The case of *Crutcher* v. *Kentucky*, 141 U. S., 47, is clearly discriminated from Osborne's case by Mr. Justice Peckham, who there says: "It has never been held, however, that when the business of the company which is wholly within the state, is but a mere incident to its interstate business, such fact would furnish any obstacle to the valid taxation by the state of the business of the company which is entirely local. So long as the regulation as to the license or taxation does not refer to and is not imposed upon the business of the company

* Following a preceding section in these words: "A tax on privileges is levied as follows, to wit:"

which is interstate there is no interference with that commerce by the state statute.''

It was stated by Mr. Justice Bradley, in the course of his opinion in the Crutcher case that: '' Taxes or license fees in good faith imposed exclusively on express business, carried on wholly within the state would be open to no such objection,'' viz., an objection that the tax or license was a regulation of, or that it improperly affected, interstate commerce. We have no doubt that this is a correct statement of the law in that regard. The statute herein differs from the cases where statutes upon this subject have been held void, because in those cases the statutes prohibited the doing of any business in the state whatever, unless upon the payment of the fee or tax. It was said as to those cases that, as the law made the payment of the fee, or the obtaining of the license a condition to the right to do any business whatever, whether interstate or purely local, it was on that account a regulation of interstate commerce, and therefore void. Here, however, under the construction as given by the state court, the company suffers no harm from the provisions of the statute. It can conduct its interstate business without paying the slightest heed to the act, because it does not apply to or in any degree affect the company in regard to that portion of its business which it has the right to conduct without regulation from the state.

The company in this case need take out no license and pay no tax for doing interstate business, and the statute is therefore, valid. In *Telegraph Co.* v. *Wirt Adams, Revenue Agent,* 71 Miss., 565, afterwards affirmed by the United States supreme court, this court said: '' Every tax is a burden, and to the extent imposed, is an interference with the pursuit or business upon which it is laid. If the business is partly interstate commerce, then that commerce is incidently affected and interfered with by every tax, of any nature whatever, that may be levied on it. In the case at bar there is no direct burden upon interstate commerce; there is no further interference with

it than will be found necessarily to result from the imposition of any burden of taxation in any shape."

The contention that the appellant does its local business at a loss, and yet must do it under the constitution of 1890 making it a common carrier, and hence that its interstate business is indirectly burdened, is fallacious. Were that so, it would be the provisions of law declaring the sleeping car companies common carriers, that would controvene the interstate commerce clause of the federal constitution, not this license tax statute.

It is not for the appellant to get all out of the local business the "traffic will bear" and then escape the correlative burden of this license tax by pleading that it, though conforming to the law making it a common carrier, as to profits, should not conform to the law taxing the business it does wholly local and entirely within this state. *Pickard* v. *Southern Pullman Car Co.*, 117 U. S., 34, is wholly unlike this case. There a tax was levied on each sleeping car, whether in state or interstate business, and the tax was required to be paid if the local business had been entirely abandoned.

We think the action of the court below clearly right, and the judgment is

*Affirmed.*