MILLER, STATE TAX COLLECTOR, *v.* GULF, MOBILE & NORTH-
ERN R. Co.

(Division B.   April 14, 1930.)

[127 So. 690.   No. 28577.]

Franklin, Easterling & Rosenthal, of Jackson, for ap-
pellant.

Flowers, Brown & Hester, of Jackson, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action against appellee in the circuit court of Hinds county to recover of appellee the sum of two dollars and fifty cents per mile for every mile of railroad track in this state over which it operated sleeping cars for the years 1926, 1927, and 1928; and, in addition, the penalty provided by the statute for non-payment of the tax when due.

The cause was tried before the circuit judge, sitting as judge and jury; the facts were agreed upon; there was a judgment for appellee; and from that judgment appellant prosecutes this appeal.

The agreed facts were embodied in a written stipulation made a part of the record, which, leaving off its formal parts, follows:

"The business of a sleeping car company has for at least twenty years been a well-known, distinctive business. The Pullman Company has operated as a sleeping car company in Mississippi during these twenty years. It builds and owns sleeping cars and does not own any railroad in this state. Its sleeping cars are run over the line of other railroads. It has its own porters and conductors in charge of its sleeping cars. These conductors and porters are employed by the sleeping car company and paid by it. The conductors collect the tickets from sleeping car passengers. The regular pullman fare goes to the Pullman Company, and the surcharge goes to the railroad company over whose line the car is operated. The railroad company owning the line over which pullman cars are operated pays the Pullman Company two cents per mile for the privilege of carrying sleepers in

its trains. The Pullman Company does no business in the state except in connection with the operation of the sleeping cars owned by it over railroads in Mississippi. The Pullman Company's cars are used on a great number of the railroads of the United States. The Company furnishes the cars fully manned and equipped to supply the demands of the railroad using them. Its operations are confined to no particular line or lines. It provides the sleeping cars to be used on any railroad that will contract for the operation of them on its lines. This business is independent of the railroad business. The sleeping car company does not do a railroad business. It does nothing more than make contracts with railroad companies for the use of its cars on the various lines of railroads.

"The Gulf, Mobile & Northern Railroad Company owns four second-hand sleeping cars in which the Pullman Company is in nowise interested. It operates one sleeping car each day from Jackson, Mississippi, to Mobile, Alabama, and one from Mobile, Alabama, to Jackson, Mississippi, each day; and one from Jackson, Mississippi, to Jackson, Tennessee, each day, and one from Jackson, Tennessee, to Jackson, Mississippi, each day. The distance from Jackson, Mississippi, to Mobile, Alabama, is two hundred fifty-five miles, of which two hundred twenty eight miles are in the state of Mississippi. The distance from Jackson, Mississippi, to Jackson, Tennessee, is three hundred two miles, of which two hundred fifty-seven miles are in the State of Mississippi. The route to Jackson, Tennessee, and the route to Mobile, Alabama, are the same from Jackson, Mississippi, to Union, Mississippi, a distance of approximately seventy-two miles. These cars do not carry a sleeping car conductor. Each of them has a porter to make down the berths and look after the car. The Gulf, Mobile & Northern Railroad Company has no express authority under its charter to operate as a sleeping car company. These cars are treated

by it as railroad cars with additional accommodations, and they are operated at a heavy loss.

"The Gulf, Mobile & Northern Railroad Company, in addition to its ad valorem taxes, pays the privilege tax on its mileage in Mississippi, for the operation of a rail- road, required by the statutes of this state, which is twenty-five dollars per mile. It is classified as a second class railroad for the purpose of fixing the privilege tax.

"The gross earnings of each railroad company are taken into consideration in classifying the roads for the purpose of imposing privilege taxes. The gross earnings of the Gulf, Mobile & Northern Railroad Company in- cludes its earnings from the sleeping cars it operates and to that extent are considered in fixing its classification, while the gross earnings of other railroad companies over which sleeping car companies operate sleepers do not include the sleeping car fares that go to the sleeping car companies.

"Where the Gulf, Mobile & Northern Railroad Com- pany operates one sleeping car each way per day the Pullman Company on some of the first class roads oper- ates twenty-five to fifty each way per day. And the Pullman Company is paid by the railroad company two cents per mile for each car.

"The Gulf, Mobile & Northern Railroad Company op- erates no sleeping car wholly within the state, but each car operated by it, on each trip and every trip it makes, runs between a point without the state and a point with- in the state of Mississippi. Each car is operated wholly in Interstate Commerce, but said Company accepts sleep- ing car fares and surcharges from passengers between points within the state.

"The Gulf, Mobile & Northern Railroad Company owns no sleeping cars except the four mentioned that are operated by it as part of its regular passenger trains, and these cars do not at any time move over any line except the line of the Gulf, Mobile & Northern Railroad Company.

"The total mileage over which said sleeping cars were operated by the Gulf, Mobile & Northern Railroad Company during the year December 1, 1926, to December 1, 1927, was three hundred thirty-five and eighty-one hundredths miles, and the total mileage over which said sleeping cars were operated during the years December 1, 1927, to December 1, 1928, and December 1, 1928, to December 1, 1929, was four hundred seven and forty-seven hundredths miles, and the tax of two dollars and fifty cents per mile which is imposed on sleeping car companies by section 7753 of Hemingway's 1927 Code (Laws 1926, chapter 118, section 184), has not been paid by the said Gulf, Mobile & Northern Railroad Company."

The applicable statutes are sections 184, 186, and 239 of chapter 118 of the Laws of 1926, Hemingway's Code 1927, sections 7753, 7740, and 7813. These statutes follow in the order stated.

"7753. *Sleeping Cars.*—184. On each sleeping and palace car company, carrying passengers from one point to another in this state, for each mile of first class railroad over which the company runs its cars in this state ....$3.50.

"Same, for each mile of second or third class railroad over which the company runs its cars in this state.... $2.50."

"7740. *Railroads.*—186. Section 3856 of chapter 114 of the Code of 1906, levying privilege taxes on railroads, be and the same is hereby amended so that for the purpose of levying a privilege tax on railroads, such railroads are divided into four classes: 1st, 2nd, 3rd and narrow gauge, and privilege taxes levied on them as follows:

"On each railroad of the 1st class, per mile....$45.00
"On each railroad of the 2nd class, per mile.... 25.00
"On each railroad of the 3rd class, per mile.... 10.00
"On each narrow gauge railroad, per mile.... 2.50

"The railroad commission shall, annually, on or before the first Monday in August, classify the several railroads

according to their charter and the gross earnings of each, and the privilege taxes thereon shall be paid on or before the first day of December, and the findings of the said railroad commission shall be certified to the auditor of public accounts and the chancery clerk of the county through which each road or roads run; and any person or persons, natural or artificial, who shall exercise any of the privileges taxed herein, without first paying the tax and procuring the tax or license, as required by law, shall be subject to the pains and penalties imposed by section 3894 of the Code of 1906, and to such other pains and penalties as may be otherwise provided by law.''

''7813. *Taxes Apply to Several Businesses.*—239. All privilege taxes herein levied shall be paid in addition to any and all other taxes, and any person, firm or corporation pursuing more than one of the businesses herein taxed shall pay the privilege tax on each separate business so conducted or pursued, except as specifically provided by law. It is the intention and purpose of this act to impose privilege taxes on every person, firm, and corporation engaged in the several businesses named herein in the amount and in the manner set out herein.''

We are of opinion that the case of Postal Telegraph-Cable Co. v. Miller, State Tax Collector (Miss.), 124 So. 434, is decisive of the questions involved in the present case, against appellee's position. We are unable to distinguish the cases on principle.

It is true that appellee does not come within the usual definition of a sleeping car company; it is a railroad company, which is a distinct business from that of a sleeping car company. Nevertheless, appellee carries on both of those businesses.

It was contended by the telegraph company in the case above referred to that it was operating in this state only one business, not two, and that was the telegraph business; that the telegraph business and the telephone business was a single business, that each was only a phase of the other; that they were so intimately connected that

each could not be separately taxed without imposing double taxation.

Likewise, it is contended in the present case that appellee is engaged in the railroad business, and not in the sleeping car business; that appellee's sleeping cars are not operated as a sleeping car business, but as a mere incident to, and part of, its railroad business. The court held in that case that the telegraph business and the telephone business were two distinct businesses; and that the telegraph company was carrying on both, and was, therefore, liable to the privilege tax levied by the statute on each; that where several separate and distinct occupations or businesses are pursued by the same person, firm or corporation, a separate privilege tax may be imposed on each, notwithstanding they are all combined in one general business, and the appliances and instrumentalities used are, in a large measure, common to all; that a license to pursue a given occupation or business does not confer a right or license to pursue another and distinct business or occupation.

The fact that appellee's charter gives it no express authority to operate sleeping cars on its line of railroad is immaterial. The privilege of operating sleeping cars is taxed, regardless of whether or not the business is legally carried on.

What was said in that case with reference to the question whether the statutes there involved violated the commerce clause (Const. U. S., art. 1, sec. 8, cl. 3) is conclusive of the validity of the statutes here involved under that clause. The tax levied on sleeping car companies by the statute is for the privilege of doing purely an intrastate business. Pullman Palace Car Co. v. Adams, 78 Miss. 814, 30 So. 757, 84 Am. St. Rep. 647.

Under section 186 of chapter 118, Laws of 1926, section 7740, Hemingway's Code 1927, the classification of railroads in this state for the purpose of privilege taxes is based on their gross earnings. Appellee has been in the habit of reporting to the Railroad Commission for that

purpose, as a part of its gross earnings, its earnings from its sleeping car business. Appellee argues that for that reason the statutes involved ought not to be construed so as to cause it to pay privilege taxes on its line of railroad, and also on its sleeping car business. It seems that a sufficient answer to that contention is that appellee ought to treat its regular railroad business and its sleeping car business as separate and distinct, in reporting its gross earnings to the Railroad Commission. In other words, the classification of its line of railroad ought to be based on its gross earnings from its strictly railroad business, as distinguished from the sleeping car business.

Reversed, and judgment here for appellant.